**STORZER & ASSOCIATES, P.C.**
Sieglinde K. Rath (#048131991)
Blair Lazarus Storzer, *admitted pro hac vice*
4400 Route 9 South, Suite 1000
Freehold, NJ 07728
rath@storzerlaw.com
bstorzer@storzerlaw.com
Tel: 410.559.6325
Fax: 202.315.3996

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAI CENTER FOR LIVING JUDAISM, INC., and RIVKAH BOGOMILSKY,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF MILLBURN, NEW JERSEY, and TOWNSHIP OF MILLBURN, NEW JERSEY ZONING BOARD OF ADJUSTMENT<br><br>Defendants. | Civ. Action No.<br>2:23-cv-1833-MCA-MAH<br><br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND STAY OF DISCOVERY**<br><br>**Returnable: December 18, 2023** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT ........................................................................1

STATEMENT OF FACTS ................................................................................1

PROCEDURAL HISTORY ...............................................................................5

ARGUMENT .....................................................................................................5

   I.   LEGAL STANDARD .................................................................................5

   II.  DEFENDANTS' MOTION IS ILL-CONCEIVED, AND FAILS TO
UNDERSTAND THE NATURE OF PLAINTIFFS' CLAIMS. ...........................6

   III.   DEFENDANTS' ARGUMENTS HAVE NO RELEVANCE TO
PLAINTIFFS' FACIAL CHALLENGES TO DEFENDANTS' ZONING
CODE. ...............................................................................................................8

     A.  Count III of Plaintiffs' Complaint Is a Facial Challenge to the Zoning Code
Pursuant to RLUIPA's Equal Terms Provision. .................................................9

     B.  Count IV of Plaintiffs' Complaint Is a Facial Challenge to the Zoning Code
Pursuant to RLUIPA's Unreasonable Limitations Provision. ..........................10

   IV. DEFENDANTS' ARGUMENTS HAVE NO RELEVANCE TO
PLAINTIFFS' AS-APPLIED CHALLENGES, AS THEIR RLUIPA AND
SECTION 1983 CLAIMS HAVE DIFFERENT ELEMENTS AND
STANDARDS OF PROOF THAN THE  STATE PREROGATIVE WRIT
CLAIMS. .........................................................................................................11

     A.  RLUIPA Substantial Burden on Religious Exercise Claim.......................12

     B.  RLUIPA Section (b) Discrimination Claims. .............................................15

     C.  Constitutional Claims....................................................................................16

   V.  PLAINTIFFS' AS-APPLIED CLAIMS ARE RIPE AND DEFENDANTS'
UNTIMELY RIPENESS CHALLENGE SHOULD BE REJECTED.................18

     A.  A Ripeness Challenge is Incompatible with a Motion for Judgment on the
Pleadings. .........................................................................................................18

     B.  Plaintiffs' Claims Are Ripe for Review. .....................................................19

       1.  Plaintiffs' facial challenges. ......................................................................19

       2.  Plaintiffs' as-applied challenges. ...............................................................20

   VI. DEFENDANTS' ARGUMENT AS TO THE ZBA'S *RES JUDICATA*
ISSUE SHOULD BE REJECTED. ...................................................................22

VII.   DISCOVERY SHOULD NOT BE STAYED.............................................35

CONCLUSION.......................................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Actelion Pharms. Ltd. v. Apotex, Inc.*, No. CIV. 12-5743, 2013 WL 5524078
(D.N.J. Sept. 6, 2013) ...................................................................................6

*Adhi Parasakthi Charitable, Med., Educ. and Cultural Soc'y of N. Am., v. Twp. of
W. Pikeland*, 721 F. Supp. 2d 361 (E.D. Pa. 2010) ....................................10

*Akishev v. Kapustin*, 23 F. Supp. 3d 440 (D.N.J. 2014) .........................................35

*Bibbs v. Trans Union LLC*, 43 F.4th 331 (3d Cir. 2022)......................................5, 6

*Bressman v. Gash*, 131 N.J. 517 (1993) ......................................................... 25, 26

*Cardinal Properties v. Borough of Westwood*, 547 A.2d 316 (App. Div. 1988)....34

*CMR D.N. Corp. v. City of Philadelphia*, 829 F. Supp. 2d 290 (E.D. Pa. 2011) ......8

*Cobb v. George Weston Bakers Distrib., Inc*., No. CIV. 10-676 RMB/JS, 2012 WL
2344452 (D.N.J. June 19, 2012)...................................................................28

*Coventry Square, Inc. v. Westwood Zoning Board of Adjustment,* 138 N.J. 285,
298-99, 650 A.2d 340 (1994) .......................................................................29

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................................................................21

*Fifth Ave. Presbyterian Church v. City of N.Y.,* 293 F.3d 570 (2d Cir. 2002) ........22

*First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 353, 921 A.2d
417 (2007)....................................................................................................28

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021).........................................16

*Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 326 F. Supp. 2d 1140 (E.D.
Cal. 2003) ......................................................................................................6

*House of Fire Christian Church v. Zoning Bd. Of Adjustment Of City Of Clifton*,
379 N.J. Super. 526 879 A.2d 1212 (App. Div. 2005)................................ 30, 31

*Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.,* 915 F.3d 256 (4th
Cir. 2019).....................................................................................................27

*Khal Anshei Tallymawr, Inc. v. Twp. of Toms River*, No. CV 21-2716, 2021 WL 5757404 (D.N.J. Dec. 3, 2021).............................................................. 8, 19, 20, 21

*Kikumura v. Hurley,* 242 F.3d 950 (10th Cir. 2001) ...............................................22

*Kyle-Labell v. Selective Serv. Sys.*, 364 F. Supp. 3d 394 (D.N.J. 2019) ................18

*Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025 (3d Cir. Mar. 1, 2022)......16

*Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253 (3rd Cir. 2007).......................................................................................................9, 15

*Maxx-Roxx, LLC v. Plan. Bd. of City of Margate*, No. A-0572-19T1, 2020 WL 7018235 (N.J. Super. Ct. App. Div. Nov. 30, 2020)............................................33

*McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009).........................................14

*Meleika v. Jersey City*, No. CV 17-1959 (KM-JBC), 2018 WL 4522046 (D.N.J. Sept. 21, 2018).................................................................................................26

*Morgan v. Covington Twp.*, 648 F.3d 172 (3d Cir. 2011) .......................................27

*MSO, Inc. v. Plan. Bd. of Borough of Glen Rock*, No. A-3430-19, 2022 WL 498503 (N.J. Super. Ct. App. Div. Feb. 18, 2022)................................................26

*Oxford House, Inc. v. Twp. of N. Bergen*, No. 22-2336, 2023 WL 4837835 (3d Cir. July 28, 2023) ...............................................................................................17

*Peachlum v. City of York*, 333 F.3d 429 (3d Cir. 2003) ................................ 8, 19, 20

*Pennington v. Plan. Bd. of Borough of Monmouth Beach*, No. A-3322-16T4, 2018 WL 2049278 (N.J. Super. Ct. App. Div. May 3, 2018) .......................... 31, 33, 34

*Pieretti v Mayor and Council of Bloomfield*, 173 A.2d 296 (1961)................. 33, 34

*Przywieczerski v. Blinken*, No. CV2002098KMJBC, 2021 WL 2385822 (D.N.J. June 10, 2021)................................................................................................18

*Russell v. Bd. of Adjustment of Borough of Tenafly*, 31 N.J. 58, 65, 155 A.2d 83 (1959)........................................................................................................ 23, 26

*Sandpiper Homeowners' Ass'n, Inc. v. Plan. Bd. of Borough of Keyport*, No. A-3722-07T3, 2009 WL 2486474 (N.J. Super. Ct. App. Div. Aug. 17, 2009)........27

*Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663 (E.D. Pa. 2005) .7

*Scottsdale Ins. Co. v. Kat Constr. LLC*, No. CV 21-00278, 2022 WL 20652788 (D.N.J. Oct. 5, 2022) ...............................................................................18

*Sica v. Board of Adjustment of Twp. of Wall*, 127 N.J. 152 603 A.2d 30, 37 (1992) ..................................................................................................................29

*Swartzwelder v. McNeilly,* 297 F.3d 228 (3d Cir. 2002) ........................................22

*Tandon v. Newsom*, 141 S. Ct. 1294 (2021) ...........................................................16

*Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285 (3d Cir. 1993)....................7

*Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002) . 17, 22

*United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)..................................................................................................................11

*Usechak v. Borough of Shrewsbury Plan. Bd.*, No. A-2857-16T4, 2018 WL 6424311 (N.J. Super. Ct. App. Div. Dec. 7, 2018) ............................ 23, 25, 26, 33

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977).........17

*Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77 (3d Cir. 2011) ...............................6

*Washington v. Klem*, 497 F.3d 272 (3d Cir. 2007) ...................................................13

*WR Prop. LLC v. Twp. of Jackson*, No. CV173226 (MAS) (DEA), 2021 WL 1790642 (D.N.J. May 5, 2021).............................................................................22

**Statutes**

42 U.S.C. § 1983 ......................................................................................................12

42 U.S.C. § 2000cc-2 ...............................................................................................13

42 U.S.C. §§ 2000cc. ...................................................................................... passim

**Ordinances**

Township of Millburn, N.J., Ordinances, Art. 6 § 606.2.........................................27

## PRELIMINARY STATEMENT

In their Memorandum in Support of Motion for Judgment on the Pleadings and Stay of Discovery, ECF No. 24-1 ("DB"), Defendants do not accurately recount the substance of Plaintiffs' Complaint, treating it merely as a "zoning appeal" instead of acknowledging its allegations of significant civil rights violations that result from the Township's oppressive laws, actions, and zoning decision denying Plaintiffs the right to build their much-needed house of worship.  Throughout their memorandum, the Defendants either (a) do not address, or (b) advocate applying the wrong standard to Plaintiffs' claims.  Instead, they ask that if this Court finds that their proffered reason for denial was incorrect under state law, that it essentially remand Plaintiffs' land use application back to the Zoning Board that violated their rights in the first place, even though there is no statutory or regulatory basis for doing so, and even though such action would continue to unlawfully deprive Plaintiffs of the benefit of the United States Constitution and federal civil rights laws meant to safeguard their right to worship.  Plaintiffs submit this Opposition brief to respectfully request this Court to deny Defendants' Motion in its entirety.

## STATEMENT OF FACTS

There is not, and has not been since at least 1993, an Orthodox Jewish house of worship in Millburn Township.  ECF No. 1 ¶¶ 39, 337.  Rabbi Mendel and Rivkah

Bogomilsky moved to Millburn Township in 1993 and, not having any alternative to exercise their religious beliefs, began hosting a prayer meeting in their home that had been operating in Millburn Township since about 1985 in various homes. *Id.* ¶¶ 13-15. Plaintiff Chai Center was the religious organization that eventually grew out of these prayer meetings. *Id.* ¶ 17. The Chai Center seeks to provide many of the services of a house of worship, including a Sunday School, prayer services, space for Jewish lifecycle events, classes for adults, and spaces for holiday observances. *Id.* ¶¶ 29-33, 42-46, 48-52. The Chai Center's current facilities, however, are woefully inadequate to accommodate such religious exercise. *Id.* ¶¶ 47–56. It cannot engage in the full range of religious practices required by its mission, has been unable to accommodate the religious needs of its congregants or potential congregants, and is further limited in the specific practices in which it can engage due to a prior settlement agreement with the Township. *Id.* ¶¶ 58-73, 212.

Plaintiffs first sought to build a purpose-built synagogue on its property at 437-439 Millburn Avenue, Millburn, New Jersey (the "Property") in 2000 after being threatened by a Township official (the "First Millburn Ave. Application"). *Id.* ¶¶ 141-143. The Town of Millburn does not allow houses of worship to be constructed "by right" anywhere in the Township, so any proposed house of worship is subjected to a "conditional use" process by which it is subject to public comment and public hearings. *Id.* ¶¶ 88, 90-91. Further, and even though there are not any

unimproved three-acre lots within the Township, Millburn nevertheless only permits houses of worship on three-acre lots or larger, regardless of the actual size of the house of worship. *Id.* ¶¶ 97, 343.

Plaintiffs also challenge the Township's zoning code itself, which discriminates against houses of worship and in favor of various nonreligious assembly and institutional uses by requiring more parking spaces for a house of worship than for other similar uses. *Id.* ¶¶ 94-95. The Township also unreasonably limits the location of a house of worship within its borders by only allowing houses of worship as a conditional and not a permitted use within the Township, and by requiring three acres for all new buildings despite the fact that there are no such unimproved lots anywhere in the Township. *Id.* ¶ 343.

The First Millburn Ave. Application sought to utilize one of two existing homes on the Property as a house of worship. *Id.* ¶ 147. It applied for a single variance, which was from the three-acre lot requirement. *Id.* ¶ 152. Nonetheless, the First Millburn Ave. Application was denied. *Id.* ¶ 162.

Plaintiffs next sought to build a purpose-built synagogue in 2021 (the "Second Millburn Ave. Application"). *Id.* ¶¶ 217, 219. The Second Millburn Ave. Application sought a number of variances, including some necessitated by the Township's targeted changes to the Zoning Code in 2012 following a lawsuit by the Bogomilskys against the Township. *Id.* ¶¶ 207, 213-216, 222-223. The Township

conducted six public hearings on the Second Millburn Ave. Application, ultimately denying it on *res judicata* grounds. *Id.* ¶¶ 230, 280.

These denials took place with a backdrop of nearly 30 years' worth of Plaintiffs being singled out for different and worse treatment by the Township. For example, Plaintiffs have been subjected to a surprise "inspection" by the Township on Yom Kippur, the holiest day of the Jewish year. *Id.* ¶¶ 130-131. Township police have extensively monitored Plaintiffs' home, including keeping a file of, *inter alia*, the Bogomilskys' daughter's driving record. *Id.* ¶¶ 187-190. The Board's record on the First Millburn Application includes a traffic report by the Millburn *Police Department* replete with extraneous information such as the histories of other houses of worship within Millburn. *Id.* ¶¶ 153-155. Township officials have purposefully frustrated the Bogomilskys' attempts to purchase a 3-acre property. *Id.* ¶¶ 167-170. The Township has also sued the Bogomilskys for holding prayer meetings in their home based on the subjective feelings of a Zoning Official. *Id.* ¶¶ 198-199. Finally, the hearings on the Second Millburn Ave. Application included numerous biased statements from neighbors, as well as substantive and procedural deviations from the prescribed form. *Id.* ¶¶ 233-235, 238, 243-275.

## PROCEDURAL HISTORY

The Township's denial of the Second Millburn Ave. Application prevents Plaintiffs from developing their house of worship.  *Id.* ¶ 336.  On or about March 31, 2023, Plaintiffs initiated this lawsuit, filing a seven-count Complaint alleging violations of the Substantial Burdens (Count I), Nondiscrimination (Count II), Equal Terms (Count III), and Unreasonable Limitation (Count IV) provisions of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc, *et seq.* ("RLUIPA"), the Free Exercise Clause of the First Amendment (Count V), the Equal Protection Clause of the Fourteenth Amendment (Count VI) to the United States Constitution, and a New Jersey state "prerogative writ" claim (Count VII). These include facial and as-applied challenges to the Township's Zoning Code.

## ARGUMENT

### I.   LEGAL STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c) is analyzed under the same standards that apply to a Rule 12(b)(6) motion. *Bibbs v. Trans Union LLC*, 43 F.4th 331, 339 (3d Cir. 2022).  In accordance with Rule 12(c), "a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party."  *Id.* (citations omitted).  A Rule 12(c) motion may

be granted if, on the basis of the pleadings, the movant is entitled to judgment as a matter of law. *Id.* A plaintiff can prevail against a Rule 12(c) motion if the complaint contains "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)) (internal quotations omitted).

In accordance with Federal Rule of Civil Procedure 26(c), "the Court may stay discovery only on a showing of 'good cause' by the party requesting the stay." *Actelion Pharms. Ltd. v. Apotex, Inc.*, No. CIV. 12-5743, 2013 WL 5524078, at *2 (D.N.J. Sept. 6, 2013).

## II.   DEFENDANTS' MOTION IS ILL-CONCEIVED, AND FAILS TO UNDERSTAND THE NATURE OF PLAINTIFFS' CLAIMS.

Defendants attempt to improperly focus the Court's attention entirely on the issues raised by Plaintiffs' state law count, over which the Court has pendent jurisdiction, in an attempt to bypass their obligations under federal civil rights laws and the Constitution. DB at 1-2; *see Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 326 F. Supp. 2d 1140, 1142 n.1 (E.D. Cal. 2003), *aff'd*, 456 F.3d 978 (9th Cir. 2006) (holding that administrative proceedings under RLUIPA, including previous land use board decisions, are not given "any particular deference.").

However, they failed to raise such challenges before filing their Answers (ECF Nos. 9 & 10), and Federal Rule of Civil Procedure 12(b)(1) would have required such a motion six months ago.[1]

It is not disputed in Defendants' motion that Plaintiffs' religious needs are unmet, that they filed an application to build a synagogue, and that Defendants reached a final decision on that application that prevents them from building. Plaintiffs thus state claims under RLUIPA's Substantial Burdens provision and the Free Exercise Clause. Plaintiffs further allege that Defendants intentionally discriminated against them based on their Orthodox Jewish identity, stating claims under RLUIPA's Nondiscrimination provision and the Equal Protection Clause. ECF No. 1 ¶¶ 238, 269, 272-274. Additionally, the Township Code treats houses of worship on less than equal terms with nonreligious assembly and institutional uses,

---

[1] In this Circuit, "[a] challenge to the ripeness of an action for adjudication is appropriately brought as a motion to dismiss for lack of subject matter jurisdiction." *Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669 (E.D. Pa. 2005). Defendants' unreasonable delay on this point belies the seriousness of their position. As a practical matter, a land use challenge is ripe when a "plaintiff has given local land-planning authorities the opportunity to render a final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993). The ZBA admits the decision on the Second Millburn Ave. Application was "final" and the Township purportedly lacks information to know one way or another (and should not now be permitted to argue differently). ECF No. 1 ¶ 345; ECF No. 9 ¶ 345; ECF No. 10 ¶ 345.

and unreasonably limits where houses of worship can locate in the Township, stating claims under RLUIPA's Equal Terms and Unreasonable Limitation provisions. Defendants' Motion does not address any of these alleged and undisputed facts, and should be rejected outright.

### III.   DEFENDANTS' ARGUMENTS HAVE NO RELEVANCE TO PLAINTIFFS' FACIAL CHALLENGES TO DEFENDANTS' ZONING CODE.

Plaintiffs' Complaint includes facial challenges to Defendants' Zoning Code on the basis that the Code unreasonably limits where houses of worship may locate within the Township of Millburn, in violation of RLUIPA (Count IV).  Plaintiffs' Complaint also alleges that the Code's land use regulations treat houses of worship on less than equal terms with nonreligious assemblies or institutions (Count III).

Facial challenges to zoning ordinances are immediately ripe.  Specifically, "the Third Circuit has held that facial challenges to ordinances ripen at the time of enactment." *CMR D.N. Corp. v. City of Philadelphia.*, 829 F. Supp. 2d 290, 297 (E.D. Pa. 2011) (citing *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006); *Khal Anshei Tallymawr, Inc. v. Twp. of Toms River*, No. CV 21-2716, 2021 WL 5757404, at *6 (D.N.J. Dec. 3, 2021) (same).  This is because "unconstitutional statutes or ordinances tend to chill protected expression among those who forbear speaking because of the law's very existence." *Peachlum v. City of York*, 333 F.3d 429, 434-35 (3d Cir. 2003).  Defendants fail to address these

claims, focusing only on the standard applied by the Board.  DB at 12-20.  Thus,

Defendants' Motion cannot succeed as to Counts III and IV of Plaintiffs' Complaint.

A. <u>Count III of Plaintiffs' Complaint Is a Facial Challenge to the Zoning
Code Pursuant to RLUIPA's Equal Terms Provision.</u>

Count III of Plaintiffs' Complaint alleges a violation of RLUIPA's Equal

Terms provision, which provides that "[n]o government shall impose or implement

a land use regulation in a manner that treats a religious assembly or institution on

less than equal terms with a nonreligious assembly or institution."  42 U.S.C. §

2000cc(b)(1).  In the Third Circuit, "a religious plaintiff under the Equal Terms

Provision must identify a better-treated secular comparator that is similarly situated

in regard to the *objectives* of the challenged regulation."  *Lighthouse Inst. for*

*Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 268 (3rd Cir. 2007).

Plaintiffs have pled that, in response to a prior loss in a RLUIPA Equal Terms case,

the Township amended its Zoning Code to make the parking requirements for houses

of worship *more* restrictive than for similar, secular institutional or commercial uses

such as art galleries, showrooms, offices and financial institutions, public and private

schools, restaurants and theaters, all nonreligious assembly and/or institutional land

uses.  ECF No. 1 ¶¶ 94-95, 213-214.  Plaintiffs have similarly pled that houses of

worship that seek to locate within the "Commercial/Medical Office" zone have

different requirements than secular comparators within that zone, such as building

coverage limitations.  *Id.* ¶ 100.  Once again, Defendants' arguments do not address

Plaintiffs' Complaint in these respects.

### B. Count IV of Plaintiffs' Complaint Is a Facial Challenge to the Zoning Code Pursuant to RLUIPA's Unreasonable Limitations Provision.

Similarly, Count IV of Plaintiffs' Complaint includes another facial challenge

to Defendants' Zoning Code.  *Id.* ¶¶ 362-363.  RLUIPA's Unreasonable Limitations

provision provides that "[n]o government shall impose or implement a land use

regulation that . . . unreasonably limits religious assemblies, institutions, or

structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).  In practice, this means

that municipalities are prohibited "from broadly limiting where religious entities can

locate."  *Adhi Parasakthi Charitable, Med., Educ. and Cultural Soc'y of N. Am., v.*

*Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 387 (E.D. Pa. 2010).  Here, Plaintiffs

have pled that the Township does not permit religious land use without "conditional

use" approval *anywhere* within the Township, and even where it is permitted as a

"conditional use," any house of worship – no matter how small and no matter how

little lot coverage is sought – must be located on a parcel at least *three acres* in size.

ECF No. 1 ¶¶ 88-91, 97.  Plaintiffs have further pled that these lots are extremely

scarce, that in the past the Township has actively frustrated Plaintiffs' attempts to

purchase a sufficiently sized lot, and that the Township's Planning Board has been

aware of the unavailability of three-acre lots within the Township for nearly 20

years. *Id.* ¶¶ 166-171.  Even though the Township has been aware since at least 2004 of the unavailability of three-acre lots within Millburn, it has nonetheless kept this requirement through two revisions of its Zoning Code.  *Id.* ¶¶ 172, 213-214. Defendants' zoning scheme therefore creates a nearly impossible set of conditions for an applicant to meet in order to obtain the required permission to build a house of worship anywhere within Millburn.  Such regulation is unreasonable, and Defendants' Motion fails to address these allegations and claim.

Defendants' Motion, to the extent that it purports to seek judgment as to Counts III and IV, should be denied.

## IV. DEFENDANTS' ARGUMENTS HAVE NO RELEVANCE TO PLAINTIFFS' AS-APPLIED CHALLENGES, AS THEIR RLUIPA AND SECTION 1983 CLAIMS HAVE DIFFERENT ELEMENTS AND STANDARDS OF PROOF THAN THE  STATE PREROGATIVE WRIT CLAIMS.

Plaintiffs' Complaint alleges six violations of Plaintiffs' rights under RLUIPA and the First Amendment in addition to Plaintiffs' state law "prerogative writ" claim. The Third Circuit has long cautioned that proper standards be applied to constitutional claims in the land use context to "prevent[] us from being cast in the role of a 'zoning board of appeals.'"  *United Artists Theatre Cir., Inc. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003).  Yet this is exactly what Defendants urge, asking this Court to treat Plaintiffs' Complaint as merely a zoning appeal.

Plaintiffs instead request that this Court apply the appropriate standard under federal law to each of their claims.  Congress set forth the appropriate standard for claims under RLUIPA within the statute, and there is significant precedent within the Third Circuit for Plaintiffs' constitutional claims brought under 42 U.S.C. § 1983.  Thus, Defendants' broad arguments about whether its actions were "arbitrary, capricious or unreasonable" are inapposite.[2]

### A.  RLUIPA Substantial Burden on Religious Exercise Claim.

Where, as here, Plaintiffs' religious activities have been substantially burdened in the land use context, RLUIPA provides the appropriate test, which has been further refined in this Circuit through case law.  With respect to Count I, Plaintiffs' RLUIPA Substantial Burden claim (ECF No. 1 ¶¶ 356-357):

> (a)(1) No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

---

[2] It should not come as a surprise that the legal test for, *inter alia*, discrimination is not whether the challenged action was merely "reasonable."  Such a standard would invite rather than thwart personal biases, such as in the old joke that an anti-Semite is one who "hates Jews more than is absolutely necessary."  *See, e.g.*, Orrin Konheim, *"Lipstadt considers, what is anti-Semitic?,"* Washington Jewish Week, Feb. 15, 2019, https://www.washingtonjewishweek.com/lipstadt-considers-what-is-anti-semitic/.  *See generally* ECF No. 1 ¶¶ 238, 269, 272-274 (describing hostility toward Orthodox Jews).

(A)     is in furtherance of a compelling governmental interest; and

(B)     is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a).  In the Third Circuit, "a substantial burden exists where . . . the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007).  Here, Plaintiffs have pleaded numerous ways in which going without a synagogue continues to force them to substantially modify their behavior and to deviate from their religious mission.  This includes both past harms as well as continued future harms, both of which are redressible in this action.  *See generally* 42 U.S.C. § 2000cc-2(a) ("A person may assert a violation of this chapter as a claim or defense in a judicial proceeding <u>and obtain appropriate relief</u> against a government." (emphasis added)).  Specifically, Plaintiffs have alleged that they now must operate out of their home subject to a list of prohibitions and restrictions stemming from a prior lawsuit instituted against them by the Township.  ECF No. 1 ¶¶ 199-212.  Spatial limitations, advertising restrictions due to a prior settlement agreement, and the lack of features of a purpose-built synagogue such as a kitchen for serving kiddush meals, among other burdens,  seriously impede Plaintiffs in running a Sunday School, from growing their congregation, and forces them to

13

conduct important religious services in a rented location where there is no guarantee that the space will be available from year to year. *Id.* ¶¶ 48-51, 63-68, 70.

Plaintiffs have further alleged, and Defendants do not address in their briefing, that the Defendants' discretionary invocation of *res judicata* was not in support of a compelling governmental interest, nor was it narrowly tailored to any such interest, as required by RLUIPA. Plaintiffs have alleged both that there was no compelling governmental interest in the denial of the Second Application, and that a complete denial was not the least restrictive means of advancing any such interest. ECF No. 1 ¶¶ 339-340; *McTernan v. City of York*, 564 F.3d 636, 649 (3d Cir. 2009) ("'Compelling' interests, the Supreme Court has explained, identify 'interests of the highest order.'"). Defendants' Motion does not challenge these assertions. To the contrary, Defendants argue only that the Board's decision was not "arbitrary, capricious or unreasonable" (DB at 18)–a completely different and irrelevant standard–and that therefore *all* of Plaintiffs' claims must be dismissed. This is absurd. Their argument does not reach the question of whether the Board's decision substantially burdened Plaintiffs' religious exercise, or whether it was the least restrictive means of achieving a "compelling" interest.

B. <u>RLUIPA Section (b) Discrimination Claims.</u>

Nor do Defendants' arguments reach the issues presented by Plaintiffs' Nondiscrimination (Count II) or Equal Terms (Count III) claims. These claims are, respectively:

> (1) Equal terms
>
> No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.
>
> (2) Nondiscrimination
>
> No government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination.

42 U.S.C. § 2000cc(b).

In *Lighthouse Institute for Evangelism*, the Third Circuit established that for a RLUIPA Equal Terms claim, "a religious plaintiff under the Equal Terms Provision must identify a better-treated secular comparator that is similarly situated in regard to the *objectives* of the challenged regulation." 510 F.3d at 268. Here, Plaintiffs have alleged that the Defendants' Zoning Code treats houses of worship differently and worse than secular comparators such as schools, theaters or restaurants. ECF No. 1 ¶¶ 90-91, 94-100; *see supra*.

Plaintiffs have further alleged that other, non-Orthodox Jewish houses of worship have been allowed to expand without regard to either the three-acre land requirement or the imposition of any parking requirements at all. *Id.* ¶¶ 334, 345.

Again, Defendants' motion fails to address these claims and allegations.

   C. Constitutional Claims.

Plaintiffs' § 1983 constitutional claims – seeking to protect their rights under the Free Exercise (Count V) and Equal Protection Clauses (Count VI) – each also warrant a much more in depth analysis than Defendants suggest.  It is axiomatic that the government violates the Free Exercise Clause when it "proceeds in a manner intolerant of religious beliefs."  *Lasche v. New Jersey*, No. 20-2325, 2022 WL 604025, at *8 (3d Cir. Mar. 1, 2022) (quoting *Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021)).  Government regulations that abridge the freedom to outwardly practice one's faith are subject to strict scrutiny review if those regulations are not neutral and generally applicable.  *Fulton*, 141 S. Ct. at 1877.  Here, the entire conditional use process mandated by the Zoning Law creates a "system of individualized exemptions" that triggers strict scrutiny analysis.  *Id.*; *see also* ECF No. 1 ¶¶ 230-275.  So, too, do Plaintiffs' allegations that secular comparators were treated more favorably than their religious use.  *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) ("[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise.").  Finally, a government's intentional discrimination – as alleged by Plaintiffs on the

basis of their Orthodox Jewish faith – will always trigger strict scrutiny.  *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 167 (3d Cir. 2002) (holding facially neutral ordinance that was enforced in a discriminatory manner against Orthodox Jews violated the Free Exercise clause).  For all of these reasons, the Defendants' arguments are entirely inapposite to Plaintiffs' Free Exercise claims.

Finally, Defendants miss the mark with respect to Plaintiffs' Equal Protection claim, which alleges discriminatory intent on the part of the Defendants.  The Third Circuit has relied on the Supreme Court's framework from *Village of Arlington Heights v. Metropolitan Housing Development Corporation* to examine intentional discrimination such as that which Plaintiffs allege in this case. *See Oxford House, Inc. v. Twp. of N. Bergen*, No. 22-2336, 2023 WL 4837835, at *3 (3d Cir. July 28, 2023) (discussing and utilizing *Arlington Heights* framework).  This approach "demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."  *Id.* (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)).  Plaintiffs have pled myriad facts demonstrating Defendants' intentional, discriminatory treatment.  It is this standard, and not Defendants' "arbitrary, capricious and reasonable" standard that controls here.

## V.   PLAINTIFFS' AS-APPLIED CLAIMS ARE RIPE AND DEFENDANTS' UNTIMELY RIPENESS CHALLENGE SHOULD BE REJECTED.

### A.   A Ripeness Challenge is Incompatible with a Motion for Judgment on the Pleadings.

As an initial matter, Plaintiffs note that Defendants chose to file Answers to Plaintiffs' Complaint rather than raise their ripeness challenge in a motion pursuant to Federal Rule of Civil Procedure 12(b)(1).  The failure to do so demonstrates the weakness of their argument and, regardless of their failure, for the reasons set forth below, their argument must also be rejected on its merits.  Defendants are attempting to circumvent their obligations under Federal Rule of Civil Procedure 12(b)(1).  "A motion to dismiss for lack of ripeness is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1) because ripeness is a jurisdictional matter." *Kyle-Labell v. Selective Serv. Sys.*, 364 F. Supp. 3d 394, 401 (D.N.J. 2019); *Przywieczerski v. Blinken*, No. CV2002098KMJBC, 2021 WL 2385822, at *3 n.5 (D.N.J. June 10, 2021) ("A Rule 12(b)(1) motion is the vehicle for ripeness arguments."); *Scottsdale Ins. Co. v. Kat Constr. LLC*, No. CV 21-00278, 2022 WL 20652788, at *2 (D.N.J. Oct. 5, 2022) ("Under Rule 12(b)(1), a defendant can lodge a facial or a factual attack on a court's subject matter jurisdiction.").  Since a motion pursuant to Federal Rule of Civil Procedure 12(b)(1) must be brought before filing a responsive pleading and Defendants have filed their Answer, Defendants should be stuck with their choice and cannot maintain a ripeness challenge to Plaintiffs' claims in the within Motion.

18

B. <u>Plaintiffs' Claims Are Ripe for Review.</u>

    1. *Plaintiffs' facial challenges.*

As discussed above, Defendants completely overlook the fact that Plaintiffs' Complaint includes facial challenges to Defendants' zoning code. These claims arise under two provisions of RLUIPA (the Equal Terms (Count III) and Unreasonable Limitations (Count IV) provisions), as well as the Equal Protection Clause (Claim VI) and Free Exercise Clause (Count V). ECF No. 1 ¶¶ 80-100, 166, 331-35, 360-67. The Township's zoning code discriminates against houses of worship and in favor of various nonreligious assembly and institutional uses by requiring more parking spaces and by only allowing houses of worship as a conditional use in the Township (ECF No. 1 ¶¶ 85-96), and unreasonably limits the location of a house of worship within its borders by requiring three acres for such use despite the unavailability of such lots (ECF No. ¶¶ 97, 198, 209).

This Court has already explained that "facial challenges to regulations are ripe upon the 'mere enactment of [that] regulation.'" *Khal Anshei Tallymawr, Inc. v. Twp. of Toms River,* No. CV 21-2716, 2021 WL 5757404, at *6 (D.N.J. Dec. 3, 2021) (citing *Cnty. Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006)); *see also Peachlum v. City of York,* 333 F.3d 429, 436 (3d Cir. 2003) ("[A] facial First Amendment challenge is not normally subject to administrative finality analysis under any circumstances."). Plaintiffs' facial claims are ripe and must

19

proceed.

## 2. *Plaintiffs' as-applied challenges.*

Similarly, Plaintiffs' as-applied challenges are ripe because the ZBA has rendered a final decision on Plaintiffs' application that has resulted in a concrete injury to the Plaintiffs: their inability to worship in furtherance of their religious beliefs. *See Peachlum,* 333 F.3d at 437 ("the Federal Court has before it a sufficiently adverse proceeding where factual developments have fully evolved and a decision at this point could provide meaningful assistance to all the parties."); *Khal Anshei Tallymawr, Inc,* 2021 WL 5757404, at *7 (D.N.J. Dec. 3, 2021) (Plaintiff's claim is ripe because of immediate injury and "further factual findings would not significantly develop the record."). As the Court in *Tallymawr* held:

> By contrast, in *Congregation Kollel*, a court found the zoning board's decision "final" when the plaintiff applied for a use that, on appeal, the zoning board of appeals interpreted as "not a permitted use" in the relevant zone. 2017 WL 637689, at *10. There, the court reasoned that the zoning board of appeals' decision was final because it held two hearings on the matter, "considered substantial evidence[,] and came to its conclusion that [the plaintiffs'] proposed use" was prohibited in the proposed zone. *Id.* Because the zoning board had determined that the proposed use was prohibited, the court determined that a variance application "would not be developing additional factual record on that already-decided issue," but would "seek only to determine whether [the] [p]laintiffs' proposed use could be permitted by the Board to depart from the [o]rdinance's requirements." *Id.* (citing *Puleio v. North Brunswick Tp. Bd. Of Adjustment*, 375 N.J. Super. 613, 619 (App. Div. 2005)). The court also reasoned that, because the plaintiffs already suffered injury from the denied application, <u>they should not continue to</u>

<u>suffer injury while the land use board of appeals considered a variance</u>
<u>application for a use that it already concluded was not permitted.</u> *Id.*

*Id.*, at *7 (emphasis added).

In *Tallymawr*, the Court noted that Plaintiff had alleged financial losses and inability to exercise its religion due to the permit denial, and that it would continue to suffer these injuries during the Board's review of a variance application." *Id.* at *7. These same circumstances exist here. Plaintiffs have alleged that–as a direct result of the Township's discriminatory ordinances and the Zoning Board's final decision denying Plaintiffs' application–by having to operate out of the Rabbi's home, its religious exercise and mission is impeded in many ways including lack of space that results in an inability to offer certain programs to its congregants, the sanctuary and social hall having to occupy the same space, limited parking, lack of signage, having to erect tents for religious events and holidays, having to relocate to a local school for services and classes, inability to offer *kiddush* meals after services, being limited in the religious activities that it can host, and having their opportunities for outreach being curtailed (ECF No. 1 ¶¶ 42-73; 347, 351). Plaintiffs here, just as in *Tallymawr*, have also alleged past harm, including financial injury, such as loss of donations and ongoing off-site rental costs. *Id.* ¶¶ 352-55.

The Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Further, "limitations on the free exercise

of religion inflict irreparable injury." *Tenafly Eruv Ass'n, Inc*, 309 F.3d at 178; *see also Fifth Ave. Presbyterian Church v. City of N.Y.,* 293 F.3d 570, 574 (2d Cir. 2002); *Kikumura v. Hurley,* 242 F.3d 950, 963 (10th Cir. 2001) *abrogated on other grounds by O Centro Espirita Beneficiente Uniao do Vegetal v. Ashcroft,* 389 F.3d 973, 975 (10th Cir. 2004) (per curiam), *aff'd sub nom Gonzales v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418 (2006); *WR Prop. LLC v. Twp. of Jackson*, No. CV173226 (MAS) (DEA), 2021 WL 1790642, at *13 (D.N.J. May 5, 2021); *Swartzwelder v. McNeilly,* 297 F.3d 228, 241 (3d Cir. 2002).

This is a federal civil rights lawsuit seeking relief in order to be able to engage in protected religious exercise. Defendants have not cited to any authority that would mandate a remand to the ZBA for a "do-over," and this Court should decline to do so.

## VI.   DEFENDANTS' ARGUMENT AS TO THE ZBA'S *RES JUDICATA* ISSUE SHOULD BE REJECTED.

The Defendants' Motion is entirely predicated upon their erroneous contention that the ZBA's decision to dismiss Plaintiffs' second application was not arbitrary, capricious and unreasonable. With respect to this limited issue–which does not affect Plaintiffs' federal claims–Defendants are also wrong. In making a determination as to whether *res judicata* should attach in the context of an

application before a zoning board in New Jersey, "the [] board's analysis should be liberally construed in favor of the applicant[.]" *Usechak v. Borough of Shrewsbury Plan. Bd.*, No. A-2857-16T4, 2018 WL 6424311, at *3 (N.J. Super. Ct. App. Div. Dec. 7, 2018).  In order for *res judicata* to bar a second land use application, the same owner and property must be involved, and "the objector must also show the second application is substantially similar to the first, both as to the application itself and the circumstances of the property involved." *Russell v. Bd. of Adjustment of Borough of Tenafly*, 31 N.J. 58, 65, 155 A.2d 83, 87 (1959).

Although the same parties are involved in the first application and the second application, the changes between the two are stark and substantial; most of which were acknowledged by the ZBA and outlined in the ZBA decision itself.  These were two completely different applications, and the ZBA's decision that it was precluded by res judicata from deciding the second was as unreasonable under state law  as it was discriminatory:

| First Millburn Ave. Application | Second Millburn Ave. Application |
|---|---|
| Dual use: house of worship and residence; keep two buildings[3] | Singular house of worship; demolition of two buildings |
| Conversion of a single family residence to a house of worship; with an | 12,972 square foot house of worship to include a gathering space, kosher |

---

[3] The table was compiled from the ZBA's 2023 Resolution of Denial and testimony from Plaintiffs' professionals during the course of the hearings before the ZBA on Plaintiffs' application.  ECF No. 1 ¶ 219; RD ¶ 4 & **Exh. D**; *id.* ¶ 2 & Exh. B at 20:21-21:13, 30:13-33:22.

| | |
|---|---|
| accessory residence to remain, all within same structure | kitchen, coat room, storage area, sanctuary, office space, restrooms; 1,674 square feet on the second floor including four (4) classrooms, a storage room and restrooms; and 4,323 square feet in the basement, including several classrooms, a small reception area, mikvah, mechanical room and storage room. |
| 18 parking spaces; 2 allocated for the residence | 25 parking spaces |
| Front yard setback of 43.72 feet | Front yard setback of 69.87 feet |
| Side yard setback of 39 feet on Millburn Ave. | Side yard setback of 75 feet on Millburn Ave. |
| Forty-five (45) sanctuary seats | One hundred thirty-five (135) sanctuary seats |
| 3,305 square feet of building coverage; | 4,324 square feet of building coverage |
| 13,594 square feet of lot coverage | 16,274 square feet of lot coverage |
| Original placement of driveway | Placement of driveway moved |
| Original placement of proposed parking spaces | Placement of proposed parking spaces moved |
| Side yard setback on Bodwell Terrace of 55 feet | Side yard setback on Bodwell Terrace of 40 feet |
| No emergency driveway access from Bodwell Terrace | Emergency driveway access from Bodwell Terrace |
| No sidewalk access from Bodwell Terrace | Sidewalk access from Bodwell Terrace |
| No steep slope disturbance | Steep slope disturbance of 6,008 square feet |

24

| 6.5 foot retaining wall along the residential property line | No retaining wall |
|---|---|
| 6.5 foot retaining wall along the cemetery | Reduction to retaining wall: 3-4 feet high at highest point along the cemetery |
| Stormwater management proposed a 3 dry well system at the center of the property | System moved to more at the intersection of Bodwell Terrace; three to four dry wells and larger stone bed resulting in a decrease in peak runoff rates |

These changes resulted in a better overall project for the Property.  *See Bressman v. Gash*, 131 N.J. 517, 528 (1993) (changes between first and second plans "mitigated the adverse impact of the variance.").  They included omitting the variance request for a dual principal use on the property to a singular use,[4] two increased setbacks, more parking to mitigate impacts, removal of a 6.5' retaining wall between the residential properties and reducing the retaining wall to half its size along the cemetery border, a more robust stormwater management plan,[5] and better

---

[4] Plaintiffs' Planner testified that dual uses, such as having the residence and house of worship both on the Property as in the first application are "disfavored" and the second application only had a singular use.  RD ¶ 1 & **Exh. A** at 19:6-12.

[5] In *Usechak*, the Court noted that in terms of changes that would defeat *res judicata*, "the conforming lot is now subject to stormwater management regulations that were not in effect or applicable to the property until 2004."  *Usechak*, 2018 WL 6424311, at *5.  At the hearing before the ZBA, the Plaintiffs' engineer testified that the second application's stormwater management plan was "meeting the current day standards for stormwater management" (RD ¶ 2 & Exh. B at 32:13-14), referring to

aesthetics in terms of increased buffering and placement of access and driveways. RD ¶ 2 & **Exh. B** at 29:8-30:2.[6]

These changes fall well within the definition of "substantial changes" under New Jersey law recognized as barring application of *res judicata*. *See Russell*, 31 N.J. at 67, 155 A.2d at 88 (increase in the front setback from twenty-five to thirty feet and a decrease in the building coverage from eighteen percent to twelve percent); *Bressman*, 131 N.J. at 621 (reduced rear yard setback variance by four feet, eliminated maximum building coverage and total impervious coverage variances and added new landscape screen); *MSO, Inc. v. Plan. Bd. of Borough of Glen Rock*, No. A-3430-19, 2022 WL 498503, at *8 (N.J. Super. Ct. App. Div. Feb. 18, 2022), *cert. denied*, 251 N.J. 358, 277 A.3d 452 (2022), *and cert. denied*, 251 N.J. 381, 277 A.3d 467 (2022) (decreasing the maximum building coverage from 160.05% to 141% was "sufficiently different in size and scope".); *Usechak*, 2018 WL 6424311, at *5 ("Moving the lot line twenty-one feet north substantially changed both the sizes of the two lots and the variance relief required."); *Sandpiper Homeowners' Ass'n,*

---

new state standards that also did not exist at the time of the first application which supported rejecting *res judicata* as a bar to the Plaintiffs' second application.

[6] *Meleika v. Jersey City*, No. CV 17-1959 (KM-JBC), 2018 WL 4522046, at *4 (D.N.J. Sept. 21, 2018) (holding that a transcript of a court proceeding may be considered in the context of a motion for judgment on the pleadings because it was cited in the Complaint and relied on by the plaintiff and "is a matter of public record whose authenticity cannot reasonably be questioned.").

*Inc. v. Plan. Bd. of Borough of Keyport*, No. A-3722-07T3, 2009 WL 2486474, at
*6 (N.J. Super. Ct. App. Div. Aug. 17, 2009) (first application sought to relocate the
dividing line between Lots 4 and 5 to create two new lots; second application
proposed a three-lot subdivision.).

In a religious worship case analogous to this case, the Fourth Circuit rejected
*res judicata* as a bar to a second application, noting:

> Second, and more importantly, the two site plans are in fact markedly
> different.  The second plan addressed the first one's main deficiencies
> by moving the parking lot to the center of the Property.  This increased
> the landscaped buffer from zero to 50 feet, which fully complied with
> the buffer requirements.  The second plan also increased the parking
> lot's setback from zero to between 55 and 72.7 feet, which complied to
> a much greater extent (and arguably "to the extent possible") with the
> 75-foot setback requirement.

*Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.,* 915 F.3d 256, 262
(4th Cir. 2019), *as amended* (Feb. 25, 2019).

In addition, the applications did not involve the same relief, and *could not
have, since the zoning provision pursuant to which the second application was
submitted was only enacted in 2013*, 12 years after the first application. *See*
Township of Millburn, N.J., Ordinances, Art. 6 § 606.2(d) (available at
https://ecode360.com/35143176); *see also* n.5, *supra* (new stormwater management
regulations).  *Res judicata* cannot apply to events post-dating these new zoning and
stormwater management regulations.  *Morgan v. Covington Twp.*, 648 F.3d 172,
177-78 (3d Cir. 2011), *as amended* (Aug. 11, 2011) (joining sister Circuits in finding

that "res judicata does not bar claims predicated on events that postdate the filing of the initial complaint"). This "change in law" bars application of *res judicata* to the second application. *See First Union Nat. Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 353, 921 A.2d 417, 424 (2007) (noting that for res judicata to apply, inquiry includes "whether the evidence involves application of the same rule of law"); *Cobb v. George Weston Bakers Distrib., Inc*., No. CIV. 10-676 RMB/JS, 2012 WL 2344452, at *3 (D.N.J. June 19, 2012) ("this Court is free to reconsider if: . . . there has been an intervening change in law").

Further, some of the variances sought were *necessitated* by this change in law. At the time of the first application, the Plaintiffs met the requirements for minimum lot width, lot depth, front yard setback, side yard setback building coverage, lot coverage and parking. RD ¶¶ 2 & Exh. B at 40:10-41:6. By way of example, the front yard setback requirement in the Code was 40 feet; it has since been changed to 100 feet. The second application proposed 69.87 feet, which resulted in the building being moved further back on the Property from the street, an *improvement* from the first plan, but now needing a bulk variance for front yard setback because of the revised ordinance. *Id*. at 27:14-28:8. The residential buffer requirement and minimum parking setback requirement also did not exist at the time of the original application, thus resulting in new variance requests for both of these on the second application. *Id*. at 43:3-11.

Most significantly, there was a change in the state case law governing ZBA consideration of conditional uses such as Plaintiffs' house of worship use between the hearings on the two applications.  For the first application, the ZBA applied the former conditional use test under *Coventry Square, Inc. v. Westwood Zoning Board of Adjustment,* 138 N.J. 285, 298-99, 650 A.2d 340, 346-47 (1994).  However, for the second application, the test for "inherently beneficial" uses under *Sica v. Board of Adjustment of Twp. of Wall*, 127 N.J. 152, 165-166, 603 A.2d 30, 37 (1992), was applied.  Plaintiffs' planning expert testified at length as to this intervening change in law regarding the statutory test for consideration of the use as follows:

> In 2005, we had a new case come out known as the house of fire case which dealt with exactly the issue before the board now. Back in 2005, we had a used religious land use, that was both a conditionally permitted use and an inherently beneficial use in the board. The court was confronted with the challenge which statutory test applies? We have one test for inherently beneficial. That's the sica test. We have another test that applies for conditional use relief. That's the Coventry Square test. Back in 2000, the board went down the Coventry Square test to test for D3 relief. In 2005, subsequent to that again, the statutory test changed. The court said, when you're confronted with the issue of conditional use versus inherently beneficial use, always go down the path of inherently beneficial which is a more relaxed test. A more simplified test.

RD ¶ 1 & **Exh. A** at 15:22-16:16.  It was also explained by the New Jersey court as the following:

> In order to obtain a conditional use variance pursuant to *N.J.S.A.* 40:55D-70(d)(3), an applicant has the burden of showing both positive and negative criteria. *Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adj.,* 152 *N.J.* 309, 323, 704 *A.*2d 1271 (1998). Generally, to

satisfy the positive criteria, the applicant must establish "special reasons," (i.e., that "the use promotes the general welfare because the proposed site is particularly suitable for the proposed use"). *Ibid.* (quoting *Medici v. BPR Co.,* 107 *N.J.* 1, 4, 526 *A.*2d 109 (1987)). Satisfaction of the negative criteria requires that, "in addition to proving that the variance can be granted 'without substantial detriment to the public good,' an applicant must demonstrate through 'an enhanced quality of proof ... that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance.' " *Ibid.* (alteration *535 in original) (quoting *Medici, supra,* 107 *N.J.* at 22, n. 12, 21, 526 *A.*2d 109). *See also Coventry Square, supra,* 138 *N.J.* at 299, 650 *A.*2d 340 (establishing standard related to positive and negative criteria for conditional use variances).

"If, however, the proposed use is inherently beneficial, an applicant's burden of proof is significantly lessened." *Smart, supra,* 152 *N.J.* at 323, 704 *A.*2d 1271 (citation omitted). Not only does "[a]n inherently beneficial use presumptively satisf[y] the positive criteria," but "satisfaction of the negative criteria does not depend on an enhanced quality of proof." *Ibid.* (citations omitted). "Instead, grant of the variance depends on balancing the positive and negative criteria." *Id.* at 324, 704 *A.*2d 1271 (citation omitted). In this case, all parties agree that construction of a church is an inherently beneficial use of the land. *See State v. Cameron,* 100 *N.J.* 586, 606, 498 *A.*2d 1217 (1985) (Clifford, J., concurring) ("[C]ourts have held that religious activity itself is in furtherance of public morals and the general welfare, and that religious institutions enjoy a highly-favored and protected status, which severely curtails the permissible extent of governmental regulation in this area." (internal quotation marks and citations omitted)). Thus, the Church met the burden of proving the positive criteria, and the Board was required to engage in a balancing of the positive and negative criteria.

*House of Fire Christian Church v. Zoning Bd. Of Adjustment Of City Of Clifton*, 379 N.J. Super. 526, 534-35, 879 A.2d 1212, 1217 (App. Div. 2005).  Although this change in law was clearly significant and brought to the ZBA's attention by Plaintiffs' planner, the ZBA attorney *incorrectly* advised the Board that "changes in

the law are not a criteria to consider as to the applicability of the legal doctrine of *res judicata*." RD ¶ 4 & **Exh. D** at ¶ 58; *See House of Fire Christian Church,* 379 N.J. Super. at 535.

Plaintiffs also presented testimony as to the unreasonableness of the three-acre zoning requirement in the Township for houses of worship. RD ¶ 3 & **Exh. C.** Plaintiffs' planner testified that there were only 11 lots available in the Township in residential zones which would conform at all to the conditional use requirements to establish a house of worship there. RD ¶ 4 & Exh. D at ¶ 35. Of these 11 lots, only 4 of those lots did not have an existing institutional use on them. *Id.* Courts have recognized

> [T]he rule of res judicata does not bar the making of a new application for a variance . . . upon a showing that the continued enforcement of the restriction would frustrate an appropriate purpose. Changed circumstances or other good cause may warrant reconsideration by the local authorities. To hold differently would offend public policy by countenancing a restraint upon the future exercise of municipal action in the absence of a sound reason justifying such a static approach. The question for the municipal agency on a second application thus centers about whether there has occurred a sufficient change in the application itself or in the conditions surrounding the property to warrant entertainment of the matter again.

*Pennington v. Plan. Bd. of Borough of Monmouth Beach*, No. A-3322-16T4, 2018 WL 2049278, at *4 (N.J. Super. Ct. App. Div. May 3, 2018) (citing *Allied Realty, Ltd. v. Borough of Upper Saddle River*, 534 A.2d 1019, 1022 (App. Div. 1987)). Based upon the testimony the ZBA heard, the three-acre requirement is exactly the

type of restriction that would warrant variance relief.  In addition to all of the above, changed circumstances in the area surrounding the Millburn Ave. property were also significant with the passage of the twenty years between the two applications.

Plaintiffs' planner provided testimony that, since adjudication of the first application, there had been "significant intensification of property use in the area adjacent to where the center is being proposed."  RD ¶ 2 & Exh. B at 76:22-77:2. This included (1) the construction of a mausoleum adjacent to the Property; (2) two expansions to the Millburn High School to manage the 60% increase in enrollment over the twenty years including a second high school gym, more intense use of the athletic fields on nights and weekends and likely resulting overflow parking onto Bodwell Terrace as well as a turf field with lighting opposite the Property; (3) the Washington school conversion from a small state school for handicapped children to a fifth grade academy for the entire Township and significant increase in the number of children attending that school; (4) the approval at the former Wells Fargo property near the Property that will be redeveloped into 50-60 residential units; (5) the development of 30 townhomes across from the Property; (6) the development of 200 residential units on the former Saks property a mile from the Property; and (7) completion of a complete streets project on Millburn Avenue just a few blocks from the Property, which all contribute to the changed landscape of the neighborhood and barred application of *res judicata*.  RD ¶ 2 & Exh. B at 76:7-81:19.  *See Pennington*,

2018 WL 2049278 at *5 (Board should consider "changes in the surrounding community during the twenty-four years since the last application was denied"); *Usechak,* 2018 WL 6424311, at *5 (new cluster development across from the Property "changed the character of the neighborhood"); *Maxx-Roxx, LLC v. Plan. Bd. of City of Margate*, No. A-0572-19T1, 2020 WL 7018235, at *5 (N.J. Super. Ct. App. Div. Nov. 30, 2020) (Board correctly considered "substantial changes in the area surrounding the Property that occurred in the thirty-nine years between 1979 and 2018, when the application was heard").  Most significant was the planner's testimony that "back in 2001 we were dealing with more a purely single family residential neighborhood.  There are clearly now other types of uses here that are different than single family that would have influence on Bodwell."[7]  RD ¶ 2 & Exh. B at 86:18-87:1.

Defendants' misplaced reliance on *Pieretti v Mayor and Council of Bloomfield*, 173 A.2d 296, 298 (1961), to justify rejecting Plaintiffs' second application because it was more "intense" also fails. DB at 15.  *Pieretti* is easily distinguished in that it called for expansion of a <u>non-conforming use</u> of a "manufacturing and bottling of soda water and bottled goods, the storage, outdoors

---

[7] The Plaintiffs' planner explained the concept of "smart growth" to the Board by describing that the intensification of the uses in the neighborhood as well as Plaintiffs' use could be accommodated by the capacity in the area by "virtue of the amenities that are in place, the road systems, the infrastructure and the like."  RD ¶ 2 & Exh. B at 93:10-12.

and indoors, of bottles and cases and the sale thereof on the premises, both wholesale and retail, and the parking of trucks and automobiles" in a one-family residential zone. *Id*. at 299. The court in that case noted that the "area had become <u>more</u>, if not completely, residential" and that the application proposed that more residentially zoned land be used for "enhanced industrial purposes." *Id*. at 300 (emphasis added). By contrast, in an area that has become <u>less</u> single-family residential, the Plaintiffs are seeking a <u>conditional use</u>, which by definition in New Jersey is "a use which is suitable to a zoning district but not to every location within that district." *Cardinal Properties v. Borough of Westwood*, 547 A.2d 316, 317 (App. Div. 1988). This is quite different from *Pieretti*, where the court explained that "[r]es judicata would have to be applied especially in view of the undoubted extension of the non-conforming use." *Pieretti*, 173 A.2d at 300.

Finally, the testimony before the ZBA was confined solely to the issue of *res judicata*, with the ZBA attorney recommending that course of action. RD ¶ 2 & Exh. B at 11:2-15. This was an error, as the ZBA should have considered the merits of the Plaintiffs' application.

> [T]he Board did not comprehend it possessed broad discretionary authority to consider whatever testimony it thought was appropriate and did not necessarily have to first decide whether res judicata applied without hearing the merits of plaintiffs' application.

*Pennington*, 2018 WL 2049278, at *5.

## VII.    DISCOVERY SHOULD NOT BE STAYED.

Defendants have failed to provide good cause showing that discovery should

be stayed in this case.  In this Circuit, a defendant carries its burden by showing

> (1) whether a stay would unduly prejudice or present a clear tactical
> disadvantage to the non-moving party; (2) whether denial of the stay
> would create a clear case of hardship or inequity for the moving party;
> (3) whether a stay would simplify the issues and the trial of the case;
> and (4) whether discovery is complete and/or a trial date has been set.

*Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (citations and quotation

marks omitted).  Here, these factors weigh heavily in favor of Plaintiffs.

Plaintiffs will be unduly prejudiced by a stay in this case, especially where

this Motion will not be dispositive of all claims.  Defendants' main argument on its

motion to stay is that its own resources will be conserved if it does not have to engage

in discovery (DB 23-25), but both parties have already propounded discovery, and

most of that discovery is relevant to Plaintiffs' prosecution of counts not implicated

by Defendants' motion.  Plaintiffs will suffer the prejudice of further delay and

further burden on their religious practice – irreparable harm, as discussed above –

when Defendants' ill-conceived motion does not even fully address Plaintiffs'

claims.

Similarly, Defendants will not suffer hardship if discovery is not stayed.

Discovery will need to be conducted regardless of the decision on Defendants'

motion.  Further, the timing of Defendants' motion is evidence of even further

35

delays.  Defendants waited an additional five months from the filing of their Answers on May 11, 2023 (ECF Nos. 9 & 10) to file what is essentially a 12(b)(6) and/or 12(b)(1) motion.  Defendants now seek further delay for Plaintiffs, who remain in dire need of a synagogue – a need Defendants have actively and maliciously frustrated for nearly 30 years.

## CONCLUSION

Based upon the foregoing, Plaintiffs respectfully request that the Court deny the Defendants' Motion for Judgment on the Pleadings and Stay of Discovery.

Dated: December 4, 2023          **STORZER & ASSOCIATES, P.C.**

_____

Sieglinde K. Rath (#048131991)
Blair Lazarus Storzer, *admitted pro hac vice*
4400 Route 9 South, Suite 1000
Freehold, NJ 07728
rath@storzerlaw.com
bstorzer@storzerlaw.com
Tel: 410.559.6325
Fax: 202.315.3996

*Attorneys for Plaintiffs*

## CERTIFICATION OF SERVICE

I hereby certify that on December 4, 2023, a copy of the foregoing was filed electronically and notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

*/s/ Sieglinde K. Rath*
Sieglinde K. Rath